**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., | : : : | Civil Action No. 11-4879 (SDW)(MCA) |
| Plaintiff, | : : |  |
| v. | : : | **OPINION** |
| GAMESTOP, INC., | : : : | August 1, 2012 |
| Defendant. | : : |  |

**WIGENTON**, District Judge.

Before the Court is Gamestop, Inc.'s ("Gamestop" or "Defendant") Motion for Summary Judgment ("Motion") and the Great Atlantic & Pacific Tea Company, Inc.'s ("A&P" or "Plaintiff"), Cross-Motion for Summary Judgment ("Cross-Motion") pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). Venue is proper in this District pursuant to 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court GRANTS Defendant's Motion and DENIES Plaintiff's Cross-Motion.

**FACTUAL AND PROCEDURAL HISTORY**

On February 19, 2003, A&P and Gamestop entered into a lease agreement ("Lease") for Space #11 ("leased premises").[1]  (Compl. ¶¶ 1, 2, 5-6.)  The Lease was for a five-year term beginning April 1, 2003, and ending March 31, 2008. (White Decl. Ex. A ¶ 2 at GS-AP 00004-05.)  The Lease required Defendant to pay a fixed annual rent of $35,200.00 in equal monthly installments of $2,933.33.  (Id. ¶ 3 at GS-AP 00006.)  Additionally, the Lease provided that at the end of the initial five-year term, Gamestop had the option to renew the lease for another five years for an increased annual rent of $40,480.00 paid in equal monthly installments of $3,373.33. (Id. ¶ 4 at GS-AP 00007.)  The option language provided: "If [Defendant] elects to exercise its option to extend the term of the Lease, it shall do so by notifying [A&P] not more than eighteen (18) months and not less than eight (8) months before the beginning of the Renewal Period." (Id.)

On April 4, 2007, Gamestop wrote to A&P seeking to exercise the renewal option ("April 4, 2007 letter"). (White Decl. Ex. B at GS-AP 00039.)  Specifically, the April 4, 2007 letter stated: "This is notification that Tenant is exercising the Option to Renew at the above referenced location.  Tenant <u>would like to propose a reduced term from five (5) years to three (3) years</u>.  Term shall commence on 04/01/2008 and expire 03/31/2011."  (Id.) (emphasis added). This letter was sent to Plaintiff overnight via Federal Express and by facsimile.  (Id. at GS-AP 00040; White Decl. Ex. C at GS-AP 00041.)  The cover letter accompanying the facsimile requested that Plaintiff advise "<u>if ownership is agreeable to the three (3) year term.</u>"  (White Decl. Ex. C at GS-AP 00041) (emphasis added).  On that same day, Maureen Hockenbeck ("Hockenbeck"), an employee of A&P, acknowledged receipt of the April 4, 2007 letter and

---

[1] Space #11 is 1,760 square feet of space located within the A&P Shopping Center located in Mahwah, New Jersey. (Compl. ¶ 6.)

advised that she would submit Gamestop's request to Plaintiff's Real Estate Committee on April 11, 2007. (White Decl. Ex. D at GS-AP 00042.)

On April 11, 2007, Allan Ryff ("Ryff"), Director of Real Estate Administration for A&P sent an e-mail to Kathleen P. Grimm ("Grimm"), Defendant's employee, stating:

> I am in receipt of the renewal notice for the subject location that you sent to Maureen Hockenbeck of this office. While giving notice and exercising the five (5) year renewal option for the period 4/1/08 thru 3/31/13, you also requested that we consider reducing the five (5) year option to three (3) years at the same annual rent of $40,479.00. This would result in a loss of $80,960 in rental income for the two (2) year period that we are asked to forfeit.
>
> We are unwilling to do this and will accept April 4, 2007 your [sic] renewal notice to Maureen Hockenbeck whereby you exercised the five (5) year option.

(White Decl. Ex. E at GS-AP 00044.) Shortly thereafter, Grimm responded that she would have to speak to her Senior Vice President ("VP") because "[h]e does not want to do the five (5) year. So since [Plaintiff] will not accept the three (3) year he may opt to NOT exercise the option at all." (Id.) About an hour later, Grimm notified Ryff that her Senior VP "will not do more than three years" due to vacancies in the shopping center. (White Decl. Ex. F at A&P Disclosure Doc. #63.) The next day, Ryff responded that three years was "not an option in as much [sic] as [Defendant] exercised the five (5) year option and, after the fact, requested that we consider reducing it to three (3) years." (Id.) On April 16, 2007, Grimm informed Ryff that she would advise the Senior VP of Ryff's position and that he "may consider closing or going to a [month-to-month] status." (Id.) Grimm also advised that she would let Ryff know of the Senior VP's decision. (Id.)

3

Ryff also sent a letter dated April 12, 2007, wherein he acknowledged Gamestop's April 4, 2007 letter as an exercise of its option to renew the Lease. (White Decl. Ex. G at GS-AP 00045.) However, that letter did not address Defendant's request for a shorter lease period. (Id.)

Although the initial lease period expired on March 31, 2008, (White Decl. Ex. A ¶ 2 at GS-AP 00004-05), Gamestop continued to occupy the leased premises through August 31, 2009. (Def.'s Statement Material Facts Not in Dispute ¶ 14; Pl.'s Resp. at 5.) Between April 1, 2008, and August 31, 2009, Defendant continued to pay the initial fixed monthly rent of $2,933.33. (Morse Decl. Ex. A at 4.)

On July 9, 2009, Jeanne Fisk, Real Estate/Legal Department Manager for Gamestop, contacted Ryff to request a one-year lease for $25,000. (White Decl. Ex. H at GS-AP 00046.) Thereafter, on July 16, 2009, Marc Summey, Defendant's Senior VP of Real Estate informed A&P that Gamestop intended to close its store at the leased premises and vacate by August 31, 2009. (White Decl. Ex. I at GS-AP 00054.) Subsequently, on August 31, 2009, Gamestop vacated the leased premises. (Def.'s Statement Material Facts Not in Dispute ¶ 14; Pl.'s Resp. at 5.)

On August 22, 2011, A&P commenced this action asserting that Defendant unilaterally broke the Lease and that Defendant owed $264,286.30. (Compl. ¶ 8.) Plaintiff also alleges that Defendant's use of the premises resulted in unjust enrichment and that Defendant is responsible for reasonable attorney fees and litigation costs in accordance with the Lease. (Compl. ¶¶ 11, 13.) On April 12, 2012, Defendant filed its Motion. On May 3, 2012, Plaintiff filed the instant Cross-Motion.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

## DISCUSSION

In support of its Motion, Defendant argues that it became a month-to-month tenant as of April 1, 2008, because it did not exercise the option to renew the lease for five years. Consequently, Defendant maintains that it could vacate the leased premises at any time provided it gave A&P a month's notice. (Def.'s Br. Supp. Mot. Summ. J. ("Def.'s Br.") 9.) In response, Plaintiff asserts that Gamestop's April 4, 2007 letter renewed the option; thus, Gamestop unilaterally broke the lease when it vacated the premises on August 31, 2009. (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. ("Pl.'s Br.") 10-11, 23-24.) Alternatively, Plaintiff contends that Gamestop became a tenant at sufferance after the termination of the initial five-year lease period triggering the application of Article 39 of the Lease. (Pl.'s Br. 14 n.3. See also White Decl. Ex. A ¶ 39 at GS-AP 00032.) Lastly, Plaintiff contends that Gamestop violated the implied covenant of good faith and fair dealing. (Pl.'s Br. 21.) Both parties assert that the prevailing party is entitled to reasonable attorneys' fees. (Def.'s Br. 13; Pl.'s Br. 34. See also White Decl. Ex. A ¶ 36 at GS-AP 00032.)

6

1. Exercise of the Renewal Option

An option contract is "a continuing offer supported by a sufficient consideration . . . and so irrevocable for the time of its continuance." Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 26 (1958). Even though an option contract is irrevocable, it is "but an offer; and notice of its <u>unqualified</u> acceptance . . . ordinarily serves to create a bilateral executory contract." Id. (emphasis added). "Where the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." Manning v. Lithium Tech. Corp., Docket No. A-2389-10T4, 2011 N.J. Super. Unpub. LEXIS 3041, at *13 (App. Div. Dec. 16, 2011) (citing Heim v. Shore, 56 N.J. Super. 62, 72-73 (App. Div. 1959)). But, the optionee's acceptance must be unconditional. Robert & Richard Assocs. v. Div. of Purchase & Prop., 202 N.J. Super. 352, 366 (App. Div. 1985).

In Robert and Richard Assocs., the New Jersey State Appellate Division considered an option to purchase contained within a lease between a tenant and its landlord. 202 N.J. Super. at 354. Specifically, the lease provided that "[i]t is mutually covenanted and agreed between the parties hereto that during the <u>eleventh year of the within lease, the Lessee herein shall have the option to purchase</u> the land and building containing approximately 200,000 square feet so erected thereon." Id. Within the appropriate timeframe, the plaintiff sent its landlord a letter stating:

> Therefore, it is our intent to proceed with plans to exercise the purchase-option under paragraph 25 of the lease dated July 12, 1967, as amended on February 9, 1968, and June 23, 1971, during the 11th year of the lease, beginning on March 1, 1980. This will serve as the required notice of the lessee's intention to exercise the option, at least 180 days prior thereto, as provided in the lease.
>
> It is understood, however, that <u>we remain open to any precise and complete offer of a renegotiated lease</u> which will be at least as beneficial to the [plaintiff] as ownership.

Id. at 358 (emphasis added). The court concluded that it could not "see how this letter could be said to represent an unqualified exercise of the purchase option." Id. at 367. The court found that it was not until the plaintiff notified the defendant that "the stage for discussing 'alternatives to purchase option' had been 'exhausted' and notified [the defendant] . . . [of its] 'intention to proceed with the consummation of the purchase option per the lease'" that it unqualifiedly exercised the option. Id.

Here, Plaintiff and Defendant entered into an agreement with:

> [O]ne (1) option to extend the term of the Lease for one (1) period of five (5) years (such period being hereinafter called the "Renewal Period") upon the same terms and conditions except the fixed annual rent during the extension period shall be Forty Thousand Four Hundred Eighty and No/100 ($40,480.00) Dollars payable in equal monthly installments of Three Thousand Three Hundred Seventy-Three and 33/100 ($3,373.33) Dollars.

(White Decl. Ex. A ¶ 4 at GS-AP 00007.) However, in Defendant's April 4, 2007 letter and its subsequent conversations with A&P on the issue, it unambiguously indicated its intent to change the lease duration from five years, as stated in the option, to three years. (White Decl. Ex. B at GS-AP 00039.) In Brechman v. Adamar of N.J., Inc., the court concluded that the duration of a lease is an essential term. 182 N.J. Super. 259, 264 (Ch. Div. 1981). Defendant's acceptance, like that in Robert & Richard Assocs., is not an unqualified acceptance because it proposes to change an essential term of the option. Consequently, contrary to A&P's position, Gamestop did not exercise the option to renew and its vacation of the leased premises does not constitute a breach of the lease agreement.

2. Liquidated Damages Clause

Plaintiff argues that in the event this Court concludes that Gamestop did not exercise the renewal option, this Court should find that Defendant is subject to Article 39 of the Lease for the

8

period beginning April 1, 2008, through August 31, 2009. (Pl.'s Br. 14 n.3.) This Court is not persuaded by A&P's argument. Article 39, entitled "Holding Over," states:

> Should Tenant hold over in possession after the termination of the original term or of any extended term, such holding over shall not be deemed to extend the term or renew the Lease, but the tenancy thereafter shall continue as a tenancy at sufferance whereupon Landlord in addition to all other remedies available to it under this Lease or at law shall be entitled to receive as liquidated damages, not as a penalty, an amount equal to one and one-half (1 1/2) times the fixed annual rent as applied to such period, together with the additional rent required under the Lease.

(White Decl. Ex. A ¶ 39 at GS-AP 00032.)

Under New Jersey State law, "'[a] tenant at sufferance is one who comes into possession of land by lawful title, usually by virtue of a lease for a definite period, and after the expiration of the period of the lease, holds over without any fresh leave from the owner.'" Mintz v. Metro. Life Ins. Co., 153 N.J. Super. 329, 333 (Morris Cnty. Ct. 1977) (quoting Standard Realty Co. v. Gates, 99 N.J. Eq. 271, 275 (Ch. 1926). See also Roxfort Holding Co. v. United States, 176 F. Supp. 587, 589 (D.N.J. 1959) ("A tenant at sufferance is one who had a possessory interest in land by virtue of a conveyance and wrongfully remains in possession after the termination of his estate without claiming a superior title."). However, "[i]f the landlord . . . elect[s] to treat the holdover as a tenant and collected rent, the tenancy created [i]s that of a tenancy from month to month." Xerox Corp. v. Listmark Computer Sys., 142 N.J. Super. 232, 240 (App. Div. 1976) (citing N.J.S.A. § 46:8-10).

Here, it is undisputed that from April 1, 2008, through August 31, 2009, Defendant tendered and Plaintiff accepted monthly rent in the amount of $2,933.33. (Morse Decl. Ex. A at 4.) A&P's acceptance of Gamestop's monthly rent constitutes "fresh leave." Accordingly,

9

Defendant was not a tenant at sufferance; rather, its tenancy became a tenancy from month to month.  Therefore, contrary to Plaintiff's position, Article 39 does not apply.

   3. <u>Good Faith and Fair Dealing</u>

New Jersey courts have recognized that an implied covenant of good faith and fair dealing exists in every contract.  <u>R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.</u>, 168 N.J. 255, 276 (2001).  This duty requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  <u>Ass'n Grp. Life, Inc. v. Catholic War Veterans of U.S.</u>, 61 N.J. 150, 153 (1972) (internal quotation marks and citations omitted).  The duty of good faith is "independent . . . and may be breached even where there is no breach of the contract's express terms."  <u>Emerson Radio Corp. v. Orion Sales, Inc.</u>, 80 F. Supp. 2d 307, 311 (D.N.J. 2000), <u>rev'd, in part, on other grounds</u>, 253 F.3d 159 (3d Cir. 2001).  The duty is breached if a party "acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation."  <u>Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.</u>, 228 F.3d 275, 288 (3d Cir. 2000).  Additionally, "[t]he Restatement  and [New Jersey] cases note a state of mind or malice-like element to breach of good faith and fair dealing, holding that the duty excludes activity that is unfair, not decent or reasonable, nor dishonest."  <u>Emerson Radio Corp.</u>, 80 F. Supp. 2d at 311 (citations omitted).

A&P, relying on <u>Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.</u>, 182 N.J. 210 (2005), maintains that Defendant breached the implied duty of good faith and fair dealing.  Plaintiff's argument lacks merit.  In <u>Brunswick Hills</u>, the tenant was required to provide notice and tender a fixed sum of money by a specified date in order to exercise the option for a long-term lease.  <u>Id.</u> at 214.  The tenant timely notified the landlord of its intent to exercise the

10

option nineteen months in advance but it did not tender the payment necessary to perfect the option because it "believ[ed] that the payment was required only at the time of closing of the new lease." Id. During the nineteen months before expiration of the lease, the tenant repeatedly approached the landlord "for the purpose of setting the date and terms of the closing. The landlord's agents, through a series of written and verbal evasions, delayed responding to the persistent requests of the tenant to close the deal." Id. The landlord never requested the required payment nor advised the tenant that it had failed to fulfill an essential term of the option. Instead, the landlord waited until the expiration of the deadline to exercise the option before "point[ing] out the deficiency to the tenant" and advising that "the option was 'null and void.'" Id.

In concluding that the landlord breached the duty of good faith and fair dealing, the New Jersey Supreme Court re-emphasized that "[p]roof of 'bad motive or intention' is vital to an action for breach of the covenant." Id. at 225 (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001)). Although the court declined to "catalogue the myriad forms of conduct that may constitute a violation of the covenant of good faith and fair dealing," it noted "a few salient principles relevant" to the good faith and fair dealing analysis. Brunswick Hills, 182 N.J. at 225-26. According to the court:

> A defendant may be liable for a breach of the covenant of good faith and fair dealing even if it does not "violat[e] an express term of the contract." A plaintiff may be entitled to relief under the covenant if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose. Moreover, a plaintiff may get relief if it relies to its detriment on a defendant's intentional misleading assertions.

Id. (alteration in original) (internal citations omitted). There is no evidence of such conduct present here.

Plaintiff asserts that Gamestop's "actions were (at best) ambiguous." (Pl.'s Br. 22.) Yet, the record indicates otherwise. In its April 4, 2007 letter, Gamestop clearly indicated that it wished to exercise the option to renew the lease only if the duration was for three years, not for five years. (White Decl. Ex. B at GS-AP 00039.) Specifically, Gamestop stated: "This is notification that Tenant is exercising the Option to Renew at the above referenced location. Tenant would like to propose a reduced term from five (5) years to three (3) years. Term shall commence on 04/01/2008 and expire 03/31/2011." (Id.) In each subsequent correspondence, Gamestop consistently and explicitly informed A&P that it did not wish to exercise the option for the duration provided in the lease. (See White Decl. Ex. E at GS-AP 00044; White Decl. Ex. F at A&P Disclosure Doc. #63.) Unlike the defendants in Brunswick Hills, Gamestop did not intentionally mislead A&P regarding its intent to renew for three years. Therefore, this Court finds that Defendant did not breach the covenant of good faith and fair dealing.

4. Attorney's Fees

Article 36 of the Lease, entitled "Attorney's Fees," provides:

> [S]hould either party employ an attorney to enforce any of the conditions of this Lease, or to enforce the other party's covenants hereunder, or any of its own rights, remedies, privileges or options under this Lease, or at law or in equity[,] the prevailing party shall be entitled to reimbursements from the losing party of all costs and expenses occurred [sic] or paid by the prevailing party, in so doing, including, but not by way of limitation, all reasonable attorneys' fees and costs incurred or paid by the prevailing party at any time or times in connection therewith.

(White Decl. Ex. A ¶ 36 at GS-AP 00032.) Because each party anticipates prevailing, each party argues that it is, in turn, entitled to payment of reasonable attorney's fees.

Because this Court grants Defendant's Motion and denies Plaintiff's Cross-Motion, Defendant is the prevailing party. Consequently, it is entitled to attorney's fees. Gamestop may

submit a certification detailing the number of hours it expended in litigating this action. See Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385-86 (2009); Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 20-21 (2004).

## CONCLUSION

For the reasons stated above, Defendant's Motion is GRANTED and Plaintiff's Cross-Motion is DENIED.

**SO ORDERED**.

s/Susan D. Wigenton, U.S.D.J.

cc:  Madeline Cox Arleo, U.S.M.J.